UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMEL JONES,

        Plaintiff,

v.                                            Case No. 18-C-445

JOEL SANKEY,

        Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Jermel Jones, who is currently an inmate housed at Waupun Correctional Institution (WPI), filed this action under 42 U.S.C. § 1983, alleging that Defendant Correctional Sergeant Joel Sankey sprayed him with an incapacitating agent despite knowing he suffered from asthma in violation of his Eighth Amendment rights. The court screened Jones' complaint on March 21, 2018, and allowed him to proceed on his claim for excessive force against Sankey. ECF No. 6. Currently before the court are cross-motions for summary judgment,[1] ECF Nos. 37, 43, and Jones' motion for appointment of counsel, ECF No. 54. For the reasons that follow, Sankey's motion for summary judgment will be granted, Jones' motion for summary judgment and motion for appointment of counsel will be denied, and the case will be dismissed.

---

[1] Although Jones filed a motion for summary judgment, the motion doesn't argue that he is entitled to relief based upon the undisputed material facts, but rather that there are material disputes of fact rendering summary judgment against him inappropriate.

## BACKGROUND

On December 25, 2017, Jones was housed in the Restrictive Housing Unit of WPI. At that time, Sankey was the Restrictive Housing Unit Sergeant. At approximately 1:25 p.m., Correctional Officer (CO) Keskie notified Sankey that Jones had a spoon in his cell. At that time, Jones was in controlled separation and his property was being limited due to his previous disruptive behavior and to prevent Jones from having access to items that could be used as weapons. Sankey proceeded to contact his supervisor, Lieutenant Immerfall, who directed Sankey to attempt to retrieve the spoon from Jones. Immerfall also told Sankey not to use incapacitating agents against Jones if possible, but that they could be used if necessary.

Jones suffers from asthma, and had a contraindication to oleoresin capsicum (OC) spray, commonly known as pepper spray, noted in his file. The parties dispute whether Sankey was aware of the contraindication to OC spray. Jones asserts that Sankey was aware. In support, Jones points to the record of a call that was made to the Health Services Unit (HSU) at 1:00 p.m. on December 25, 2017, asking if there was a contraindication to spraying Jones with OC record to which the HSU responded "[p]atient has a contraindication to incapacitating agents . . . . Don't spray" at 1:12 p.m. ECF No. 41-1. Sankey asserts that he was not involved in that phone call, and was not made aware of that fact either by the officers that made that call or by Immerfall.

After speaking with Immerfall, Sankey went to Jones' cell and requested he give him the spoon. Jones refused, threatened to cut himself, and asked to speak with Immerfall regarding why he was still being held in control status. Sankey left and returned with a taser, an OC fogger, and additional staff. When he returned, Sankey asserts that he saw Jones sharpening the spoon in his cell, which Jones denies. Although the parties dispute exactly what was said next during their

2

discussion, both parties agree that Jones threatened he was going to cut himself, refused at least one request by Sankey to hand over the spoon, was warned by Sankey that he would use the OC spray if he did not hand over the spoon, and informed Sankey that he has asthma. Sankey then proceeded to open the cell door trap. In response, Jones ran to the front left corner of the cell, outside the view of the cell camera, and concealed himself behind his security smock/blanket, making it difficult for Sankey to observe Jones' well-being and whether Jones was harming himself.

Sankey then applied a one second burst of OC spray into Jones' cell as a protective measure to prevent Jones from harming himself and directed Jones to go the cell door. Jones immediately complied, and was secured with leg and wrist restraints. Sankey did not believe he had time to contact the HSU prior to applying the OC spray or to prepare a cell extraction because he believed Jones posed an imminent threat to himself. Immediately after Jones was secured in restraints, he was escorted to the shower to rinse the OC off and subsequently treated by a nurse from the HSU. As a result of the exposure to OC spray, Jones was sent to the hospital for treatment and was in the hospital from December 25 to December 27, 2017.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The fact that the parties filed cross-motions for summary judgment does not alter this standard. In evaluating each party's motion, the court must "'construe all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). The party opposing the motion for summary judgment must "submit

evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 691 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. Motion for Appointment of Counsel

After briefing on the pending motions for summary judgment was complete, Jones filed a motion for appointment of counsel. ECF No. 54. The court has no authority to appoint counsel in a civil case. On the other hand, the court does have discretion to try to recruit counsel to assist a *pro se* litigant in bringing his case. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). In exercising that discretion, the court should first consider whether the plaintiff has made a reasonable attempt to obtain counsel on his own. If the plaintiff has made a reasonable but unsuccessful attempt to obtain counsel on his own, the court should attempt to recruit counsel for him if it finds, given the difficulty of the case, the plaintiff lacks the competence to litigate it on his own. *Id.* at 654–55. In other words, the court looks to the complexity of the case and the competence of the plaintiff to determine whether the plaintiff can coherently present it to the judge or jury by himself. *Id.*

Jones' motion will be denied for several reasons. First, Jones has provided no evidence that he has sought to obtain legal counsel on his own. Second, while it is true that these types of cases

4

can often be complex, this case is relatively straight-forward. Jones claims Sankey used excessive force and was deliberately indifferent to his serious medical need when extracting him from his cell after he threatened to harm himself. While the parties dispute some of the details of what occurred, the parties are in agreement that Jones threatened to harm himself, obscured himself from view which made it difficult for Sankey to monitor his well-being, and was provided medical treatment immediately after he was extracted from his cell. As will be discussed below, Sankey's actions in the face of Jones' threat to harm himself did not violate Jones' constitutional rights. Finally, though Jones, like practically all inmates of our prisons, is not a lawyer, his filings exhibit a clear ability to communicate his points to the court. Defense of a motion for summary judgment requires the non-movant to present to the court evidence of a factual dispute that is material to the outcome of the case. Since the facts of the case are well-known by Jones, and the law governing Eighth Amendment claims based on deliberate indifference to serious medical needs and excessive force is well established, I am satisfied that this is not one of those cases that requires the recruitment of counsel. Accordingly, Jones' motion for appointment of counsel will be denied.

**B.     Excessive Force**

Jones claims Sankey's use of OC spray constituted a use of excessive force against him in violation of the Eighth Amendment. To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he (1) was deprived of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person or persons acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)). "The Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits the 'unnecessary and wanton infliction of pain' on

prisoners." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). The inquiry in claims involving allegations of excessive force by prison officials against an inmate is whether the prison official inflicted an injury "maliciously and sadistically for the very purpose of causing harm." *See Hudson*, 503 U.S. at 6; *Whitley v. Albers*, 475 U.S. 312 (1986). Thus, the infliction of even a relatively minor or de minimis injury can constitute a violation of the Eighth Amendment's prohibition of "cruel and unusual" punishment if it is done maliciously. *Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . . This is true whether or not significant injury is evident.").

"The use of mace is not a *per se* violation of the Eighth Amendment, and it can be used in limited quantities when reasonably necessary to subdue or maintain control over an inmate." *Musgrove v. Detella*, 74 F. App'x 641, 646 (7th Cir. 2003) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270–71 (7th Cir. 1984)). "The use of mace violates the Eighth Amendment only if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.'" *Id.* (quoting *Soto*, 744 F.2d at 1270–71).

Sankey's use of OC spray against Jones was not done so maliciously, but rather in response to Jones' threats of self-harm. Although the parties dispute whether Jones was sharpening his spoon and the exact wording of his threats of self-harm, it is undisputed that Jones threatened to cut himself with a spoon, refused orders to hand over the spoon, and obscured Sankey's ability to visually observe him by hiding in the corner, outside the view of the cell camera and obscured by his blanket/security smock. In addition, Sankey did not use an excessive quantity of OC spray, exposing Jones to a short one-second burst, and did not use the spray again after this initial burst

6

once Jones complied with his orders. And while Sankey knew that Jones had asthma and was told to avoid using incapacitating agents against him, "'[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'" *Guitron v. Paul*, 675 F.3d 1044, 1045–46 (7th Cir. 2012) (quoting *Whitley*, 475 U.S. at 319). The resulting hospitalization and harm to Jones is unfortunate, but the harm suffered pales in comparison to the harm Jones threatened to inflict upon himself that could lead to a much more severe outcome.

Jones' attempt to manufacture a dispute of material fact by claiming in his response and accompanying affidavit to Sankey's motion that he did not have a spoon in his cell is directly contradicted by his earlier affidavit, Jones Decl., ECF No. 40 at 2 ("the spoon was on the ground by the door"), and is not sufficient to conjure up a material dispute of fact. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) (holding affidavits "offered to contradict the affiant's deposition" lacking in credibility are "to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy" (quoting *Beckel v. Wal-Mart Assoc., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002))). While Jones may not have had the spoon in his hand at the time he was hiding in the corner, he never retracted his verbal threat of self-harm and the presence of the spoon in the cell was still impermissible and needed to be addressed in order to prevent Jones from acting on his threats of self-harm. Jones also claims that Sankey should have waited until a cell extraction team could have removed him from his cell. As Jones admits, however, this would have resulted in at least a fifteen minute delay to allow the guards to put on the necessary gear, giving Jones time to act on his threats, and exposed the guards to a risk

7

of harm themselves. As a result, the court concludes that no reasonable jury could conclude that Sankey's use of the incapacitating agent was malicious given the circumstances, and Sankey is entitled to summary judgment on Jones' excessive force claim.

**C.     Deliberate Indifference**

Jones next claims that Sankey was deliberately indifferent to his asthma condition in violation of the Eighth Amendment. A deliberate indifference claim "based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003)); *Farmer v. Brennan*, 511 U.S. 825 (1994). It is undisputed that the objective prong has been satisfied here. Regarding the subjective element, "[d]eliberate indifference requires a showing of '"more than mere or gross negligence, but less than the purposeful or knowing infliction of harm."' *Collins*, 462 F.3d at 762 (quoting *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)). The required showing is characterized as "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992).

Although the parties dispute whether Sankey was aware that Jones had a contraindication to OC spray, even assuming Sankey was aware of this fact, his actions did not violate the Eighth Amendment because they were done out of concern for Jones' welfare, not in disregard of it. Sankey was faced with a catch-22: use OC spray to subdue Jones in order to remove a dangerous object from his cell and risk agitating his asthma, or not act and risk Jones following through on his

8

threat to harm himself. Sankey's actions were taken out of a concern for Jones' welfare and the threat that he posed to himself. In addition, despite using the OC spray, Sankey's actions show a concern for Jones' asthma: Sankey used a minimal amount of OC spray in Jones' cell, immediately took Jones to the shower to wash off the spray, and contacted the HSU to get Jones further treatment. Consequently, the court concludes that no reasonable jury could conclude that Sankey was deliberately indifferent to Jones' medical condition, and Sankey is entitled to summary judgment on Jones' deliberate indifference claim.

### D. Qualified Immunity

Even if Sankey did violate Jones' Eighth Amendment rights, the court is convinced that Sankey would be entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A principle is "clearly established" if it has a "sufficiently clear foundation in then-existing precedent," meaning it is "settled law" as "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id*. at 589–90. (first quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); then quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)).

This demanding standard extends qualified immunity to "'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting

9

*Mullenix v. Luna*, 136 S. Ct. 305, 208 (2015) (per curiam)). "Evidence concerning the defendant's subjective intent is simply irrelevant" when evaluating the availability of the qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). In fact, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized."). "Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).

The undisputed facts, viewed in a light most favorable to Jones, establish that Jones: threatened to harm himself, refused to comply with Sankey's orders to turnover a prohibited item, was sprayed with OC spray only after he hid from Sankey's view by covering his body and making it difficult for Sankey to observe Jones and ensure his safety, was taken to a shower to wash the OC spray off, and was provided immediate medical assistance at the HSU and hospital. Even assuming that Sankey knew that Jones had a contraindication to OC spray, Sankey only resorted to the use of OC spray to prevent the undisputed risk Jones posed to himself given his prior threat to harm himself. Because Jones unquestionably claimed that he posed an imminent risk of harm to himself, the use of OC spray was thus an objectively reasonable response to protect Jones.

As this court stated in *Jones v. McClain*, Case No. 17-C-1523, 2018 WL 4039363, at *4 (E.D. Wis. Aug. 23, 2018), "the law arguably dictated that [Sankey] either act to prevent Jones from harming himself or desist, and risk incurring civil liability for failing to protect Jones in the face of threats of self harm." *See Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006) ("Reckless indifference to the risk of a prisoner's committing suicide is a standard basis for a federal civil rights

suit." (citing *Boncher ex rel. Boncher v. Brown Cty.*, 272 F.3d 484 (7th Cir. 2001))). Jones has not identified any mandatory authority dictating that every reasonable correctional officer would know that using OC spray on an asthmatic inmate that had a contraindication to OC spray threatening to imminently harm himself constitutes excessive force. Similarly, Jones has not identified any mandatory authority dictating that every reasonable correctional officer would know that those same actions constitute deliberate indifference. It is for precisely this reason that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Al-Kidd*, 563 U.S. at 743. Accordingly, the court is convinced that Sankey would be entitled to qualified immunity because he responded to Jones' threat of self harm in an objectively reasonable manner.

## CONCLUSION

For the foregoing reasons, Sankey's motion for summary judgment (ECF No. 43) is **GRANTED** and Jones' motion for summary judgment (ECF No. 37) and motion for appointment of counsel (ECF No. 54) are **DENIED**. The clerk is directed to enter judgment in favor of Sankey.

**SO ORDERED** this  7th  day of December, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
